1 | ROSENDO GONZALEZ (State Bar No. 137352)
ZACHARY I. GONZALEZ (State Bar No. 316577)
2 | GONZALEZ & GONZALEZ LAW, P.C.
530 S. Hewitt St., Suite 148
3 | Los Angeles, California 90013
Telephone (213) 452-0070
4 | Facsimile (213) 452-0080
E-mail: rossgonzalez@gonzalezplc.com
5 |
Proposed General Bankruptcy Counsel for
6 | Sam S. Leslie, Chapter 7 Trustee

7

8 | **UNITED STATES BANKRUPTCY COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10 | **LOS ANGELES DIVISION**

| 11 | In re | ) | BK. No. 2:18-bk-12688-SK |
|---|---|---|---|
| 12 | PROCAL INVESTMENT AND | ) | [Chapter 7] |
| | MANAGEMENT, LLC, | ) | |
| 13 | | ) | |
| | Debtor. | ) | TRUSTEE'S MOTION FOR |
| 14 | | ) | APPROVAL OF: (i) SALE |
| | | ) | AGREEMENT OF VARIOUS |
| 15 | | ) | PERSONAL PROPERTIES OF |
| | | ) | DEBTOR PURSUANT TO 11 U.S.C. |
| 16 | | ) | § 363, (ii) OVERBIDDING |
| | | ) | PROCESS, AND (iii) FINDING |
| 17 | | ) | OF GOOD FAITH UNDER 11 |
| | | ) | U.S.C. § 363(m); MEMORANDUM |
| 18 | | ) | OF POINTS AND AUTHORITIES; |
| | | ) | DECLARATION OF SAM S. LESLIE |
| 19 | | ) | IN SUPPORT THEREOF |
| 20 | | ) | |
| 21 | | ) | DATE:  May 7, 2018 |
| | | ) | TIME:  11:00 a.m. |
| 22 | | ) | PLACE: Courtroom "1668" |
| 23 | | ) | |
| 24 | _____ | ) | |

25 | **TO THE HONORABLE SANDRA R. KLEIN, UNITED STATES BANKRUPTCY CHIEF**

26 | **JUDGE, TO ALL PARTIES IN INTEREST:**

27 |     Sam S. Leslie, the Chapter 7 trustee in this bankruptcy case

28 | (the "Trustee"), through his proposed counsel, Gonzalez &

P:\home\3744\3744.006.sale motionwpd.wpd
4/17/18 RG                                    -1-

1  Gonzalez Law, P.C., fka Gonzalez & Associates, P.L.C., hereby

2  respectfully submits this motion: (i) seeking the approval of the

3  purchase/sale agreement entered with La Verne Village, LLC and/or

4  designee (the "Purchaser" or the "Landlord") in relation to

5  various personal properties of Procal Investment and Management,

6  LLC (the "Debtor")(the "Debtor's Restaurant Assets") for the

7  amount of twenty-one-thousand dollars and no cents

8  ($21,000.00)(the "Purchase Agreement"), (ii) approving the

9  overbid process, (iii) confirming that confirm there is no

10  evidence to contradict a finding of "good faith" under Section

11  363(m) of the Bankruptcy Code, and (iv) consummating the sale of

12  the Debtor's Assets in accordance with such offer to the highest

13  bidder without further notice to creditors or hearing before this

14  Court.

15      The Trustee is selling various personal properties of the

16  Debtor consisting of "Furniture, Equipment, System, Machinery,

17  Safes, Smallware, Restaurant Equipment, Restaurant Machinery and

18  Two Liquor Licenses" (collectively, the "Debtor's Restaurant

19  Assets"), "as is" and without any representation.  In addition,

20  the sale of these items is _not_ free and clear of any existing

21  (but presently unknown) leased or secured interest or U.C.C.-1

22  financing statement.

23      As part of the Purchase Agreement and in addition to the

24  $21,000 payment, the Purchaser is also waiving the right to file

25  a claim, which includes a post-bankruptcy-filing-administrative

26  claim of approximately $60,000.  Furthermore, and as part of the

27  proposed sale, the two lease agreements with the Landlords are

28  rejected.

P:\home\3744\3744.006.sale motionwpd.wpd
4/17/18 RG                                    -2-

1     The Trustee believes that the proposed sale is fair and

2 reasonable and should be approved by this Court.

3     The grounds for this motion are fully set forth in the

4 following memorandum of points and authorities and declaration

5 in support.  This motion is based upon the following memorandum

6 of points and authorities, the declaration, the papers, records

7 and pleading in this case and upon all other such evidence that

8 this Court may consider.

9     WHEREFORE, the Trustee respectfully requests that this Court

10 issue an order: (i) granting approval of the Purchase Agreement

11 pursuant to Section 363 of the Bankruptcy Code, (ii) approving

12 the overbid process, (iii) confirming that confirm there is no

13 evidence to contradict a finding of "good faith" under Section

14 363(m) of the Bankruptcy Code, and (iv) consummating the sale of

15 the Debtor's Assets in accordance with such offer to the highest

16 bidder without further notice to creditors or hearing before this

17 Court.

18 Dated:  April ___, 2018.     GONZALEZ & GONZALEZ LAW
    A Professional Corporation

19

20

21

22     By: _____

23     ROSENDO GONZALEZ
    Proposed General Bankruptcy Counsel

24     for Sam S. Leslie, Chapter 7
    Trustee

25

26

27

28

P:\home\3744\3744.006.sale motion.wpd.wpd
4/17/18 RG     -3-

# I.

## **FACTUAL BACKGROUND**

A.   This case was commenced by Procal Investment
and Management, LLC, the debtor in this bankruptcy case (the
"Debtor"), with the filing of a voluntary Chapter 7 petition
under the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*,
on March 12, 2018 [OFFICIAL DOCKET NO. 1].

B.   Sam S. Leslie was duly appointed as the Chapter 7
trustee in this case (the "Trustee").

C.   The initial meeting of creditors has been set for April
9, 2018 [OFFICIAL DOCKET NO. 2].

D.   In Schedule "B," the identified various personal
properties in the collective amount of $233,082.97, including the
following:

(i) $11,295 in office furniture (the "Furniture"),

(ii) $3,600 in office equipment (the "Equipment"),

(iii) $1,8000 in video and security system (the "System"),

(iv) $28,068,24 in machinery, fixtures and equipment

(collectively, the "Machinery"),

(v) 2 safes (collectively, the "Safes"),

(vi) smallware, beer system and walk in cooler

(collectively, "Smallware"),

(vii) $110,403.66 in miscellaneous restaurant equipment

(collectively, the "Restaurant Equipment"),

(viii) various food and restaurant machinery (collectively,

the "Restaurant Machinery"),

(ix) application for pending trademark and logo,

1   (x) licenses, franchises and royalties for seller's permit

2   for "Nancy's Pizza" as well as a seller permit for "Tam Sui

3   River," and,

4   (xi) alcohol licenses with an unknown value for both

5 restaurants.

6   E. The Debtor did not identify any secured debt in

7 Schedule "D" [OFFICIAL DOCKET NO. 1].

8   F. In Schedules "E" and "F," the Debtor identified debts

9 in the collective amount of $1,546,685.91 [OFFICIAL DOCKET NO.

10 1].

11   G. In Schedule "G," the Debtor identified two unexpired

12 leases with La Verne Village, LLC and/or designee (the

13 "Purchaser" or the "Landlord") with respect to the two

14 restaurants [with 8 years remaining] as well as a lease for an

15 apartment for the "Tam Sui employees" with La Verne Village

16 Luxury Apartments [OFFICIAL DOCKET NO. 1].

17   H. The Landlord asserts that there is an unexpired lease

18 agreement with respect to the commercial space wherein Nancy's

19 Pizza operates with approximately 8 years remaining, at the

20 monthly rate of $9,051.26, excluding other lease related charges

21 (the "NP Lease Agreement").  With respect to the NP Lease

22 Agreement, the Landlord asserts that the Debtor has breached that

23 agreement and that damages have accrued (in the approximate

24 amount of $29,380.80) and are continuing to accrued at the daily

25 rate of $302.

26   I. The Landlord asserts that there is an unexpired lease

27 agreement with respect to the commercial space wherein Tam Sui

28 operates with approximately 6 years remaining, at the monthly

1  rate of $7,436.61, excluding other lease related charges (the

2  "Tam Sui Lease Agreement").  With respect to the Tam Sui Lease

3  Agreement, the Landlord asserts that the Debtor has breached that

4  agreement and that damages have accrued (in the approximate

5  amount of $23,998.20) and are continuing to accrued at the daily

6  rate of $248.

7      J.   While there has been no record of any filed UCC-1 with

8  the California Secretary of State as to the Debtor's personal

9  properties identified in Schedule "B," the ownership of each

10 personal property/item (remaining inside the two restaurants) may

11 be disputed.

12     K.   The Trustee and the Purchaser have entered into a

13 purchase/sale agreement, subject to this Court's approval and

14 subject to overbids, for the sale and purchase of various

15 personal properties of the Debtor (the "Purchase Agreement").  A

16 copy of the Purchase Agreement is attached hereto and is

17 incorporated herein as Exhibit "1."

18

19                              **II.**

20            **TERMS AND CONDITIONS OF PURCHASE AGREEMENT**

21

22     A.   The Trustee has agreed to reject, terminate and not

23 assume the Nancy's Pizza Lease Agreement and the Tam Sui Lease

24 Agreement.  As part of the rejection and as of the signing of

25 this Agreement, the Trustee is turning-over possession and

26 control (including keys) of the premises subject to the Nancy's

27 Pizza Lease Agreement and to the Tam Sui Lease Agreement.

28 ///

P:\home\3744\3744.006.sale motion.wpd
4/17/18 RG                                    -6-

1       B.   The Trustee has agreed to sell and the Purchaser has

2   agreed to purchase the bankruptcy estate's interest, whatever it

3   may be and without any warranties or representations, sold "as

4   is," consisting of the following: Furniture, Equipment, System,

5   Machinery, Safes, Smallware, Restaurant Equipment, Restaurant

6   Machinery, and Two Liquor Licenses (the "Debtor's Restaurant

7   Assets") for the amount of twenty-one-thousand dollars and no

8   cents ($21,000.00).

9       C.   The Purchaser is acquiring the Debtor's Restaurant

10  Assets subject any existing lien or lease agreement.

11      D.   Said amount will be paid within three (3) business days

12  after the order approving the Agreement becomes a "final order"

13  under Rule 802 of the Federal Rules of Bankruptcy Procedure.

14      E.   Payment must be made in the form of a cashier's check

15  or money order made payable to "Sam S. Leslie, Chapter 7 Trustee"

16  and directly delivered to the Trustee.

17      F.   Interest at the annual rate of ten percent (10%) will

18  only accrue if the Purchaser fails to timely make the payment

19  required under the Agreement.

20      G.   Upon the execution of the Agreement, the Trustee will

21  provide the keys and turnover the premises to both restaurants to

22  the Landlord and/or Landlord's counsel.  As part of the Turnover,

23  the Landlord intends to donate to charity all food items located

24  at both restaurants.  The Trustee has no objection to said plan.

25      H.   The Purchaser's offer set forth in the Agreement will

26  be specifically subject to overbid at the time of the hearing on

27  the approval of the Agreement under the following terms and

28  conditions:

P:\home\3744\3744.006.sale motion.wpd.wpd
4/17/18 RG                                    -7-

1    (i) Any initial overbid shall be not less than $81,000

2    [which accounts $21,000 purchase price plus $60,000, the

3    approximate liquidated value of the rejection of the two leases

4    as well as the administrative claim of the Landlord];

5    (ii) Any subsequent overbid shall exceed the last

6    offering price by no less than $1,000 [or whatever amount the

7    Bankruptcy Court deems appropriate];

8    (iii) Any overbid may be presented at or before the

9    hearing on the motion seeking the approval of this Agreement;

10   (iv) Any overbid to purchase the Debtor's Restaurant

11   Assets shall contain no conditions or contingencies in addition

12   to those contained in the Agreement;

13   (v) Any overbid must provide that there is no financing

14   contingency;

15   (vi) The Debtor's Restaurant Assets are sold "as is"

16   without any representations or warranties or contingencies of any

17   kind;

18   (vii) At the conclusion of the hearing on the motion

19   seeking the approval of the Agreement, the Trustee shall request

20   that the Bankruptcy Court confirm the highest and best offer for

21   the estate's interest in the Debtor's Restaurant Assets, that

22   there is no evidence to contradict a finding of "good faith"

23   under Section 363(m) of the Bankruptcy Code, and shall proceed to

24   consummate the sale of the Debtor's Assets in accordance with

25   such offer to the highest bidder without further notice to

26   creditors or hearing before the Bankruptcy Court;

27   (viii) In order to participate in the over-bid

28   procedure at the time of the hearing on the approval of the

1   Agreement, each bidder must be present in court and tender to the

2   Trustee, a cashier's check, in the amount of not less than

3   $81,000 to participate in the bidding process.  This deposit

4   shall be forfeitable and non-refundable if the balance of the

5   accepted purchase offer is not paid to the Trustee within three

6   (3) business days after the entry of an order approving the

7   Agreement; and,

8           (ix) In the event the bidder of the accepted bid fails

9   to timely pay the required amount, the Trustee shall be

10  authorized to accept the next highest bid.  In said event, the

11  Trustee shall proceed to consummate the sale of the Debtor's

12  Restaurant Assets in accordance with such offer without further

13  notice to creditors or hearing before the Bankruptcy Court.

14      I.   The Purchaser agrees to waive and shall not file or

15  assert a claim against the bankruptcy estate in the Bankruptcy

16  Case.

17      J.   As part of the Agreement, the Trustee and the Purchaser

18  are executing mutual releases of any claims or causes of action.

19

20                              **III**

21                            **ARGUMENT**

22

23  **A.   Section 363(b)(1) Of The Bankruptcy Code Permits The**

24       **Debtor To Sell The Debtor's Restaurant Assets Other**

25       **Than In The Ordinary Course Of Business**.

26

27       1.   Section 363(b)(1) of the Bankruptcy Code

28  authorizes the Trustee to sell property of the estate.  11 U.S.C.

P:\home\3744\3744.006.sale motion.wpd
4/17/18 RG                              -9-

1  § 363(b)(1) provides that "[t]he trustee, after notice and a

2  hearing, may use, sell or lease, other than in the ordinary

3  course of business, property of the estate."

4      2.   The standard to be applied in determining whether

5  a sale should be authorized under 11 U.S.C. § 363(b)(1) is

6  whether such sale is in the best interest of the estate and the

7  price is fair and reasonable. *See, In re the Canyon*

8  *Partnership*, 55 B.R. 520 (Bankr. S.D. Cal. 1985). The debtor (or

9  trustee) is given substantial discretion in this regard. *Id.*

10      3.   Furthermore, the court has broad discretion with

11  respect to matters under Section 363(b). *See, Big Shanty Land*

12  *Corporation v. Comer Properties, Inc.*, 61 B.R. 272, 278 (Bankr.

13  N.D. Ga. 1985). Meeting this standard, of course, is dependent

14  in part upon the purpose of such sale.

15      4.   As set forth in the attached declaration of the

16  Trustee, the $21,000 proposed sale amount (which includes a

17  waiver of all claims by the Landlord, including $60,000 in

18  administrative claim) is fair and reasonable.  Accordingly, the

19  sale of the Debtor's Restaurant Assets is in the best interest of

20  the estate.

21

22  **B.**    **<u>This Motion Should Be Approved Since The Proposed Sale</u>**

23        **<u>Is In the Best Interest Of The Estate</u>**.

24

25      1.   The Trustee is proposing to sell the Debtor's

26  Restaurant Assets, "as is" and without any representations, to

27  the Purchaser for $21,000.

28  ///

P:\home\3744\3744.006.sale motionwpd.wpd
4/17/18 RG                                    -10-

1        2.   The Trustee contends that the proposed sale is

2  clearly in the best interests of the estate.

3        3.   The $21,000 purchase amount includes the

4  Purchaser's waiver of any claim or causes of action against the

5  bankruptcy estate, including a $60,000 priority administrative

6  claim.  Clearly, this result is in the best interest of all

7  creditors and the bankruptcy estate.

8

9                              **IV.**

10                          **CONCLUSION**

11

12      Based upon the foregoing, the Trustee respectfully requests

13  that this Court issue an order: (i) granting approval of the

14  Purchase Agreement pursuant to Section 363 of the Bankruptcy

15  Code, (ii) approving the overbid process, (iii) confirming that

16  confirm there is no evidence to contradict a finding of "good

17  faith" under Section 363(m) of the Bankruptcy Code, and (iv)

18  consummating the sale of the Debtor's Assets in accordance with

19  such offer to the highest bidder without further notice to

20  creditors or hearing before this Court.

21  Dated:  April *14*, 2018.      GONZALEZ & GONZALEZ LAW
                                  A Professional Corporation
22

23

24                              By:_____

25                                 ROSENDO GONZALEZ
                                  Proposed General Bankruptcy Counsel
26                                for Sam S. Leslie, Chapter 7
                                  Trustee
27

28

1

### DECLARATION OF SAM S. LESLIE

2

3       I, Sam S. Leslie, declare:

4       1.   I am the duly appointed Chapter 7 trustee in this

5   bankruptcy case.

6       2.   I have personal knowledge of the following and if

7   called upon to testify I could and would do so competently.

8       3.   From my review of the filed pleadings, I have

9   learned that this case was commenced with the filing of a

10   voluntary petition under Chapter 7 by Procal Investment

11   and Management, LLC, the debtor in this bankruptcy case (the

12   "Debtor"), with the filing of a voluntary Chapter 7 petition

13   under the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*,

14   on March 12, 2018 [OFFICIAL DOCKET NO. 1].

15       4.   The initial meeting of creditors has been set for April

16   9, 2018 [OFFICIAL DOCKET NO. 2].

17       5.   In Schedule "B," the identified various personal

18   properties in the collective amount of $233,082.97, including the

19   following:

20       (i) $11,295 in office furniture (the "Furniture"),

21       (ii) $3,600 in office equipment (the "Equipment"),

22       (iii) $1,8000 in video and security system (the "System"),

23       (iv) $28,068,24 in machinery, fixtures and equipment

24       (collectively, the "Machinery"),

25       (v) 2 safes (collectively, the "Safes"),

26       (vi) smallware, beer system and walk in cooler

27       (collectively, "Smallware"),

28

1    (vii) $110,403.66 in miscellaneous restaurant equipment

2    (collectively, the "Restaurant Equipment"),

3    (viii) various food and restaurant machinery (collectively,

4    the "Restaurant Machinery"),

5    (ix) application for pending trademark and logo,

6    (x) licenses, franchises and royalties for seller's permit

7    for "Nancy's Pizza" as well as a seller permit for "Tam Sui

8    River," and,

9    (xi) alcohol licenses with an unknown value for both

10    restaurants.

11        6.    The Debtor did not identify any secured debt in

12    Schedule "D" [OFFICIAL DOCKET NO. 1].

13        7.    In Schedules "E" and "F," the Debtor identified debts

14    in the collective amount of $1,546,685.91 [OFFICIAL DOCKET NO.

15    1].

16        8.    In Schedule "G," the Debtor identified two unexpired

17    leases with La Verne Village, LLC and/or designee (the

18    "Purchaser" or the "Landlord") with respect to the two

19    restaurants [with 8 years remaining] as well as a lease for an

20    apartment for the "Tam Sui employees" with La Verne Village

21    Luxury Apartments [OFFICIAL DOCKET NO. 1].

22        9.    The Landlord asserts that there is an unexpired lease

23    agreement with respect to the commercial space wherein Nancy's

24    Pizza operates with approximately 8 years remaining, at the

25    monthly rate of $9,051.26, excluding other lease related charges

26    (the "NP Lease Agreement").  With respect to the NP Lease

27    Agreement, the Landlord asserts that the Debtor has breached that

28    agreement and that damages have accrued (in the approximate

1  amount of $29,380.80) and are continuing to accrued at the daily

2  rate of $302.

3      10.  The Landlord asserts that there is an unexpired lease

4  agreement with respect to the commercial space wherein Tam Sui

5  operates with approximately 6 years remaining, at the monthly

6  rate of $7,436.61, excluding other lease related charges (the

7  "Tam Sui Lease Agreement").  With respect to the Tam Sui Lease

8  Agreement, the Landlord asserts that the Debtor has breached that

9  agreement and that damages have accrued (in the approximate

10 amount of $23,998.20) and are continuing to accrued at the daily

11 rate of $248.

12     11.  While there has been no record of any filed UCC-1 with

13 the California Secretary of State as to the Debtor's personal

14 properties identified in Schedule "B," the ownership of each

15 personal property/item (remaining inside the two restaurants) may

16 be disputed.

17     12.  The Purchaser and I have entered into a purchase/sale

18 agreement, subject to this Court's approval and subject to

19 overbids, for the sale and purchase of various personal

20 properties of the Debtor (the "Purchase Agreement").  A copy of

21 the Purchase Agreement is attached hereto and is incorporated

22 herein as Exhibit "1."

23     13.  We are proposing to sell the Debtor's Restaurant

24 Assets, "as is" and without any representations, to the Purchaser

25 for $21,000.

26     14.  In my opinion, the proposed sale is clearly in the best

27 interests of the estate.

28 ///

P:\home\3744\3744.006.sale motion.wpd
4/17/18 RG                              -14-

15.   That is, the $21,000 purchase amount includes the Purchaser's waiver of any claim or causes of action against the bankruptcy estate, including a $60,000 priority administrative claim.

16.   As to a request of good faith, it is my understanding that the only relation between the Debtor and the Landlord is that there were two unexpired lease agreements between the Debtor and the Landlord.  I am not aware of any type of improper conduct, insider dealing and/or collusion by the Landlord and/or by anyone with respect to the proposed sale.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this /7ᵗʰ day of April, 2018, at Los Angeles, California.

_____
SAM S. LESLIE

# EXHIBIT 1

## PURCHASE/SALE AGREEMENT

This sale/purchase (the "Agreement") is entered between Sam
S. Leslie, the Chapter 7 trustee in the bankruptcy case pending
before the United States Bankruptcy Court for the Central District
of California (USBC Case No. 2:18-bk-12688-SK)(the "Bankruptcy
Case")(the "Trustee"), and La Verne Village, LLC and/or designee
(the "Purchaser" or the "Landlord"), and is made with reference to
the following:

## I.

## RECITALS

A.    This case was commended by Procal Investment
and Management, LLC, the debtor in this bankruptcy case (the
"Debtor"), with the filing of a voluntary Chapter 7 petition under
the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, on
March 12, 2018 [OFFICIAL DOCKET NO. 1].

B.    In Schedule "B," the Debtor identified various personal
properties in the collective amount of $233,082.97, including the
following:

(i) $11,295 in office furniture (the "Furniture"),

(ii) $3,600 in office equipment (the "Equipment"),

(iii) $1,8000 in video and security system (the "System"),

(iv) $28,068,24 in machinery, fixtures and equipment (collectively, the "Machinery"),

(v) 2 safes (collectively, the "Safes"),

(vi) smallware, beer system and walk in cooler (collectively, "Smallware"),

(vii) $110,403.66 in miscellaneous restaurant equipment (collectively, the "Restaurant Equipment"),

(viii) various food and restaurant machinery (collectively, the "Restaurant Machinery"),

(ix) application for pending trademark and logo,

(x) licenses, franchises and royalties for seller's permit for "Nancy's Pizza" as well as a seller permit for "Tam Sui River," and

(xi) alcohol licenses with an unknown value for both restaurants (the "Two Liquor Licenses").

C.    The Debtor did not identify any secured debt in Schedule "D" [OFFICIAL DOCKET NO. 1].

D.    In Schedules "E" and "F," the Debtor identified debts in the collective amount of $1,546,685.91 [OFFICIAL DOCKET NO. 1].

E.    In Schedule "G," the Debtor identified two unexpired leases with the Landlord with respect to the two restaurants [with 6 and 8 years remaining] as well as a lease for an apartment for

the "Tam Sui employees" with La Verne Village Luxury Apartments
[OFFICIAL DOCKET NO. 1].

///

F.    The Landlord asserts that there is an unexpired lease
agreement with respect to the commercial space wherein Nancy's
Pizza operates with approximately 8 years remaining, at the
monthly rate of $9,051.26, excluding other lease related charges
(the "NP Lease Agreement").  With respect to the NP Lease
Agreement, the Landlord asserts that the Debtor has breached that
agreement and that damages have accrued (in the approximate amount
of $29,380.80) and are continuing to accrued at the daily rate of
$302.

G.    The Landlord asserts that there is an unexpired lease
agreement with respect to the commercial space wherein Tam Sui
operates with approximately 6 years remaining, at the monthly rate
of $7,436.61, excluding other lease related charges (the "Tam Sui
Lease Agreement").  With respect to the Tam Sui Lease Agreement,
the Landlord asserts that the Debtor has breached that agreement
and that damages have accrued (in the approximate amount of
$23,998.20) and are continuing to accrued at the daily rate of
$248.

H.    The Landlord and the Trustee acknowledge that the
ownership of each personal property/item (remaining inside the two
restaurants), which is included in Schedule "B," is disputed.  The

Landlord and the Trustee anticipate that absent the execution of
this Agreement, it is likely that ownership would be subject to
future litigation.

///

NOW, THEREFORE, for good and valuable consideration, receipt
of which is hereby acknowledged and in consideration of the
covenants, releases, representations and conditions set forth
below, the Trustee and the Purchaser (collectively, the "Parties")
agree to enter into this Agreement.

1.   Recitals.

By reference hereto, the parties incorporate the
recitals in paragraphs A through H herein, as if set forth herein
in full.

2.   Trustee's/Bankruptcy Estate's Rejection of the
     Nancy's Pizza Lease Agreement and the Tam Sui Lease
     Agreement.

Pursuant to the terms of this Agreement and effective as
of the signing of this Agreement, the Trustee has agreed to
reject, terminate and not assume the Nancy's Pizza Lease Agreement
and the Tam Sui Lease Agreement.  As part of the rejection and as

ScF

of the signing of this Agreement, the Trustee is turning-over

possession and control (including keys) of the premises subject to

the Nancy's Pizza Lease Agreement and to the Tam Sui Lease

Agreement.

///

///

3.    <u>Sale/Purchase of Debtor's/Bankruptcy Estate's</u>

<u>Personal Assets Located at Nancy's Pizza and Tam</u>

<u>Sui</u>.

Pursuant to the terms of this Agreement, the Trustee has

agreed to sell and the Purchaser has agreed to purchase the

bankruptcy estate's interest, whatever it may be and without any

warranties or representations, sold "as is," consisting of the

following: Furniture, Equipment, System, Machinery, Safes,

Smallware, Restaurant Equipment, Restaurant Machinery, and Two

Liquor Licenses (the "Debtor's Restaurant Assets") for the amount

of twenty-one-thousand dollars and no cents ($21,000.00).

The Purchaser is acquiring the Debtor's Restaurant

Assets subject any existing lien or lease agreement.

Said amount will be paid within three (3) business days

after the order approving this Agreement becomes a "final order"

ScF

P:\home\3744\3744.005.sale purchase agreement.wpd
4/6/18 rg                        -5-

under Rule 802 of the Federal Rules of Bankruptcy Procedure.

Payment must be made in the form of a cashier's check or money order made payable to "Sam S. Leslie, Chapter 7 Trustee" and directly delivered to the Trustee.

Interest at the annual rate of ten percent (10%) will only accrue if the Purchaser fails to timely make the payment required under this Agreement.

///

///

4.    <u>Turnover/Possession</u>.

Pursuant to the terms of this Agreement and upon the execution of this Agreement, the Trustee will provide the keys and turnover the premises to both restaurants to the Landlord and/or Landlord's counsel. As part of the Turnover, the Landlord intends to donate to charity all food items located at both restaurants. The Trustee has no objection to said plan.

5.    <u>Bankruptcy Court Approval</u>.

This Agreement is specifically subject to approval by the Bankruptcy Court in the Bankruptcy Case.

In that respect and upon receipt of the executed Agreement, the Trustee will promptly prepare and file a motion

seeking the approval of this Agreement pursuant to Section 363 of

the Bankruptcy Code by the Bankruptcy Court in the Bankruptcy

Case.    The Trustee will

also file an application seeking to shorten time in order to

expedite the approval of this Agreement.


6.    <u>Overbid Procedure</u>.

The Purchaser's offer set forth in this Agreement will

be specifically subject to overbid at the time of the hearing on

the approval of this Agreement under the following terms and

conditions:


(i) Any initial overbid shall be not less than $81,000

[which accounts $21,000 purchase price plus $60,000, the

approximate liquidated value of the rejection of the two leases as

well as the administrative claim of the Landlord];

(ii) Any subsequent overbid shall exceed the last

offering price by no less than $1,000 [or whatever amount the

Bankruptcy Court deems appropriate];

(iii) Any overbid may be presented at or before the

hearing on the motion seeking the approval of this Agreement;

(iv) Any overbid to purchase the Debtor's Restaurant

Assets shall contain no conditions or contingencies in addition to

ScF

those contained in this Agreement;

(v) Any overbid must provide that there is no financing contingency;

(vi) The Debtor's Restaurant Assets are sold "as is" without any representations or warranties or contingencies of any kind;

(vii) At the conclusion of the hearing on the motion seeking the approval of this Agreement, the Trustee shall request that the Bankruptcy Court confirm the highest and best offer for the estate's interest in the Debtor's Restaurant Assets, that there is no evidence to contradict a finding of "good faith" under Section 363(m) of the Bankruptcy Code, and shall proceed to consummate the sale of the Debtor's Assets in accordance with such

///

offer to the highest bidder without further notice to creditors or hearing before the Bankruptcy Court;

(viii) In order to participate in the over-bid procedure at the time of the hearing on the approval of this Agreement, each bidder must be present in court and tender to the Trustee, a cashier's check, in the amount of not less than $81,000 to participate in the bidding process. This deposit shall be forfeitable and non-refundable if the balance of the accepted purchase offer is not paid to the Trustee within three (3) business days after the entry of an order approving this

ScF

P:\home\3744\3744.005.sale purchase agreement.wpd
4/6/18 rg                                    -8-

Agreement; and

(ix) In the event the bidder of the accepted bid fails to timely pay the required amount, the Trustee shall be authorized to accept the next highest bid.  In said event, the Trustee shall proceed to consummate the sale of the Debtor's Restaurant Assets in accordance with such offer without further notice to creditors or hearing before the Bankruptcy Court.

7.   <u>Waiver of Claim</u>.

Pursuant to the terms and conditions of this Agreement, including but not limited to the Bankruptcy Court's approval, the Purchaser agrees to waive and shall not file or assert a claim against the bankruptcy estate in the Bankruptcy Case.

///

///

8.   <u>Return Purchase Amount</u>.

In the event that this Agreement is not approved by the Bankruptcy Court in the Bankruptcy Case and/or the Bankruptcy Court in the Bankruptcy Case approves a purchase offer from a party other than the Purchaser, the Trustee shall promptly return any funds received from the Purchaser.

The Trustee will hold, and not deposit, any funds received for the purchase pending approval by the Bankruptcy Court

*SCF*

in the Bankruptcy Case.

    9.   <u>Mutual Releases</u>.

Subject to the provisions set forth in this Agreement,
the bankruptcy estate and Trustee, in his role as the Chapter 7
trustee, and (to the extent applicable) s predecessors,
successors, affiliates, subsidiaries, parent corporations,
guarantors, sureties, insures, members, principals, agents,
employers, representatives, attorneys, employees, assigns,
officers and directors (collectively, the "Trustee Affiliated
Parties"), hereby release and forever discharge the Purchaser and
its (to the extent applicable) predecessors, successors,
affiliates, subsidiaries, parent corporations, guarantors,
sureties, insures, members, principals, agents, employers,
representatives, attorneys, employees, assigns, officers and
directors (collectively, the "Purchaser Released Parties") from
any and all claims, debts, damages, liabilities, demands,
objections, costs, expenses, disputes, actions and causes of
action of every nature, whether known or unknown, suspected or
unsuspected, which the Trustee Affiliated Parties now hold or have
at any time heretofore owned or held or may now own or hold
against the Purchaser Released Parties by reason of any acts,

SCF

circumstances, facts, events or transactions occurring before the effective date of this Agreement.

The Purchaser, and (to the extent applicable) its predecessors, successors, affiliates, subsidiaries, parent corporations, guarantors, sureties, insures, members, principals, agents, employers, representatives, attorneys, employees, assigns, officers and directors (collectively, the "Purchaser Affiliated Parties") hereby release and forever discharge the bankruptcy estate and the Trustee, and his predecessors, successors, affiliates, subsidiaries, parent corporations, guarantors, sureties, insures, members, principals, agents, employers, representatives, attorneys, employees, assigns, officers and directors (collectively, the "Trustee Released Parties") from any and all claims, debts, damages, liabilities, demands, objections, costs, expenses, disputes, actions and causes of action of every nature, whether known or unknown, suspected or unsuspected, which Purchaser Affiliated Parties now hold or have at any time heretofore owned or held or may now own or hold against the Trustee Released Parties by reason of any acts, circumstances, facts, events or transactions occurring before the date of this Agreement.

This Agreement and the above releases are between the Parties executing this document and do not apply to or operate to either benefit or impair third parties in any way and are not to be relied upon by third parties for any reason.

10. <u>Unknown Claims: Waiver of Rights Under California Civil Code Section 1542, etc.</u>

Pursuant to the terms of this Agreement, and except as otherwise provided herein, it is the intention of the Trustee, Purchaser, the Trustee Affiliated Parties, and the Purchaser Affiliated Parties in executing this Agreement, and receiving the consideration called for herein, that this Agreement be effective as a full and final accord and satisfaction and mutual general release of all claims, debts, damages, liabilities, demands, obligations, costs, expenses, and disputes that the Parties hereto may have against each other, by reason of any acts, circumstances, or transactions occurring before the date of this Agreement. In furtherance of this intention, the Parties hereto hereby acknowledge that they are familiar with California Civil Code Section 1542 and that they hereby expressly waive the protection of California Civil Code Section 1542, which provides as follows:

///

///

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The Parties each waive and relinquish any right or benefit which they have or may have under California Code Section 1542, and any similar law of any state or territory of the United States.  That is, no Party hereto may invoke the benefits of California Civil Code Section 1542, or any such similar law, in order to prosecute any claims released hereunder.  In connection with such waiver and agreement, the Parties each acknowledge that each of them is aware that she, he or it and their respective attorneys, may hereafter discover claims or facts or legal theories in addition to or different from those which they now know or believe to exists with respect to the subject matter of this Agreement but that it is their intention hereby to fully, finally and forever settle and release all of the matters, known or unknown, suspected or unsuspected, which do not now exist, may exist or heretofore existed between the Trustee Released Parties

5CF

P:\home\3744\3744.005.sale purchase agreement.wpd
4/6/18 rg                        -13-

and the Purchaser Released Parties, by reason of any acts, circumstances, facts, events or transactions occurring before the date of this Agreement, except as otherwise provided herein. In furtherance of such intention, the releases herein given shall be and remain in effect as a full and complete release, notwithstanding the discovery or existence of any such additional claims, facts or legal theories, except as otherwise provided herein.

11.  **Binding Effect**.

This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, assigns, representatives, agents, employees and attorneys without limitation.

12.  **Entire Agreement**.

This Agreement contains the sole and entire agreement and understanding of the parties hereto with respect to the entire subject matter hereof, and any and all prior discussions, negotiations, commitments or understandings related hereto, if any, are hereby merged herein. No representations, oral or

SC

otherwise, express or implied, have been made by any party hereto.
No other agreements not specifically contained herein, oral or
otherwise, shall be deemed to exist or to bind any of the parties
hereto.

///

///

///

///

13.  <u>Waiver, Modification and Amendment</u>.

No provision hereof may be modified, amended or waived
unless in writing and signed by the party to which such
modifications, amendment or waiver would benefit.  Waiver of any
one provision herein shall not be deemed to be a waiver of any
other provision herein.  This Agreement may be modified or amended
only by a written agreement executed by all of the parties hereto.

14.  <u>Construction and Jurisdiction</u>.

This Agreement shall be construed in accordance with the
laws of the State of California.  In the event this Agreement must
be enforced or interpreted by a court of law, the parties hereby
agree that the United States Bankruptcy Court for the Central
District of California shall have exclusive jurisdiction to

*SCF*

resolve any disputes among or relating to the interpretation or
enforcement of this Agreement, or any claim arising from this
Agreement.  The prevailing party in such action shall be entitled
to reasonable attorneys' fees and costs.


    15.  Authority.

    Each Party warrants and represents that he, she or it
has the sole right and exclusive authority to execute this
Agreement on behalf of the party on whose behalf she or he signs
and receive the sums specified in it.


    IN WITNESS WHEREOF, the parties have caused this Agreement to
be executed as of the date first written and their attorneys have
indicated their approval as to form by their respective signatures
in the appropriate spaces below.  This Agreement shall be
effective once all parties have executed the Agreement.


Dated:  April __, 2018    _____
                                  SAM S. LESLIE, Chapter 7
                                  Trustee & Seller

Dated:  April 6, 2018    _____
                                  Authorized Member of La
                                  Verne Village, LLC, by Hutton
                                  Los Angeles, a California

resolve any disputes among or relating to the interpretation or enforcement of this Agreement, or any claim arising from this Agreement.  The prevailing party in such action shall be entitled to reasonable attorneys' fees and costs.

15.  <u>Authority</u>.

Each Party warrants and represents that he, she or it has the sole right and exclusive authority to execute this Agreement on behalf of the party on whose behalf she or he signs and receive the sums specified in it.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed as of the date first written and their attorneys have indicated their approval as to form by their respective signatures in the appropriate spaces below.  This Agreement shall be effective once all parties have executed the Agreement.

Dated:  April 6/9 2018

_____
SAM S. LESLIE, Chapter 7
Trustee & Seller

Dated:  April ___, 2018

_____
Authorized Member of La
Verne Village, LLC, by Hutton
Los Angeles, a California

Corporation, its Authorized
Member, Purchaser

Dated: April __, 2018

GONZALEZ & GONZALEZ LAW
Professional Corporation

By: _____
    ROSENDO GONZALEZ
Proposed General Bankruptcy
Counsel for Sam S. Leslie,
Chapter 7 Trustee

Dated: April 6, 2018

BARNETT & RUBIN
Professional Corporation

By: _____
    JEFFREY D. RUBIN
Counsel for La Verne Village,
LLC, Purchaser

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**530 S. Hewitt Street #148, Los Angeles, CA 90013**

A true and correct copy of the foregoing document entitled (*specify*): TRUSTEE'S MOTION FOR APPROVAL OF: (i) SALE AGREEMENT OF VARIOUS PERSONAL PROPERTIES OF DEBTOR PURSUANT TO 11 U.S.C. § 363, (ii) OVERBIDDING PROCESS, AND (iii) FINDING OF GOOD FAITH UNDER 11 U.S.C. § 363(m); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF SAM S. LESLIE IN SUPPORT THEREOF will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **April 18, 2018**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Richard L Barnett    rick@barnettrubin.com, kelly@barnettrubin.com
- M Douglas Flahaut    flahaut.douglas@arentfox.com
- Rosendo Gonzalez    rossgonzalez@gonzalezplc.com,
  rgonzalezatty@ecf.epiqsystems.com;vbowen@gonzalezplc.com;rarias@gonzalezplc.com
- Christopher J Langley    chris@langleylegal.com,
  ecfllf@gmail.com;omar@langleylegal.com
- Sam S Leslie (TR)    sleslie@trusteeleslie.com,
  sleslie@ecf.epiqsystems.com;trustee@trusteeleslie.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **April 18, 2018**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

### SEE ATTACHED LIST

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 18, 2018 | Vincent Bowen | /s/ Vincent Bowen |
|---|---|---|
| Date | Printed Name | Signature |

P:\home\3744\3744.006.sale motion.wpd.wpd
4/18/18 RG                                                -16-

1

2

**ADDITIONAL SERVICE INFORMATION**

3

**SERVED VIA U.S. MAIL:**

4

**Debtor**

5   Procal Investment and Management, LLC
501 S. San Gabriel Blvd., Suite 101

6   San Gabriel, CA 91776

7   **Bankruptcy Judge**
The Honorable Sandra R. Klein

8   United States Bankruptcy Court
255 East Temple St., Suite 1534

9   Los Angeles, CA 90012

10  **Purchaser's Counsel**
Jeffrey D. Rubin, Esq.

11  Barnett & Rubin
5450 Trabuco Road

12  Irvine, CA 92620

13  LEA Accountancy, LLP
3435 Wilshire Boulevard

14  Suite 990
Los Angeles, CA 90010

15

16

17

18

19

20

21

22

23

24

25

26

27

28